UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FULL SAIL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:08-CV-0446-G (ECF) |
| ) | |
| DAUBEN INC. d/b/a TEXAS ) | |
| INTERNATIONAL PROPERTY ) | |
| ASSOCIATES; and DOES 1-10, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S OPPOSITION TO**

**DAUBEN INC'S MOTION TO DISMISS COMPLAINT FOR LACK OF JURISDICTION**

**AND FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................1

II. FACTUAL BACKGROUND ..........................................................................................1

    A. Full Sail, and its Use of the FULL SAIL Mark for Nearly Three Decades .............1

    B. Full Sail's Federal Registrations for the FULL SAIL Mark ...................................2

    C. Full Sail's Applications to Register the FULL SAIL UNIVERSTY Mark .............3

    D. Dauben's Alleged Unlawful Activity ......................................................................3

        1. Dauben's Business Model ............................................................................3

        2. Dauben's Repeated Bad-Faith Domain Name Registrations Have Been the Subject of Over 100 Arbitrations or Federal Court Proceedings. ..............................................................................................4

        3. Dauben Strikes Against Full Sail .................................................................4

    E. Full Sail's Claims Against Dauben ..........................................................................5

    F. Dauben's Motion ......................................................................................................6

III. ANALYSIS .......................................................................................................................6

    A. Legal Standard .........................................................................................................6

    B. The Court Has Subject Matter Jurisdiction ..............................................................7

        1. The Court has Federal Question Jurisdiction ..............................................7

        2. The Court has Diversity Jurisdiction. ........................................................10

    C. Full Sail States Valid Claims for Relief .................................................................11

IV. CONCLUSION ..............................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Audi AG v. D'Amato*,
   469 F.3d 534 (6th Cir. 2006) ...............................................................................................12

*Bell Atlantic Corp. v. Twombly*,
   __ U.S. __, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........................................................7

*Cunningham v. Laser Golf Corp.*,
   222 F.3d 943 (Fed. Cir. 2000)..............................................................................................11

*Dell, Inc. v. This Old Store, Inc.*,
   No. H-07-0561, 2007 U.S. Dist. LEXIS 73952 (S.D. Tex. Oct. 3, 2007) .............................9

*Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*,
   627 F. Supp. 856 (E.D. Pa. 1985) .........................................................................................7

*Fila Sport, S.p.A. v. Diadora America, Inc.*,
   141 F.R.D. 74 (N.D. Ill. 1991)..............................................................................................8

*Golden Door, Inc. v. Odisho*,
   646 F.2d 347 (9th Cir. 1980) ...............................................................................................12

*Hamilton v. First Am. Title Co.*,
   No. 07-1442, 2008 U.S. Dist. LEXIS 13732 (N.D. Tex. Feb. 28, 2008)...............................7

*In re Dixie Restaurants*,
   105 F.3d 1405 (Fed. Cir. 1997).............................................................................................11

*In Re International Flavors & Fragrances, Inc.*,
   183 F.3d 1361 (Fed. Cir. 1999).............................................................................................13

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) .................................................................................................7

*La-Tex Supply Co. v Fruehauf Trailer Div., Fruehauf Corp.*,
   444 F.2d 1366 (5th Cir. 1971) .............................................................................................10

*MCG, Inc. v. Great Western Energy Corp.*,
   896 F.2d 170 (5th Cir. 1990) .................................................................................................6

*Moran v. Kingdom of Saudi Arabia*,
   27 F.3d 169 (5th Cir. 1994) ...................................................................................................6

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*,
   741 F.2d 273 (9th Cir. 1984) ...............................................................................................10

*Scott Fetzer Co. v. House of Vacuums, Inc.*,
    381 F.3d 477 (5th Cir. 2004) ..................................................................................................9

*Shipp v. McMahon*,
    199 F.3d 256 (5th Cir. 2000) ..................................................................................................6

*St. Paul Reinsurance Co. v. Greenberg*,
    134 F.3d 1250 (5th Cir. 1998) .........................................................................................10, 11

*Stephens v. Halliburton Co.*,
    No. 3:02-CV-1442-L, 2003 U.S. Dist. LEXIS 15739 (N.D. Tex. Sep. 5, 2003).....................10

*Sun Life Assur. Co. v. Fairley*,
    485 F. Supp. 2d 731 (S.D. Miss. 2007)..................................................................................10

*Test Masters Educ. Servs. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ..................................................................................................6

*Venetian Casino Resort, LLC v. VenetianGold.com*,
    380 F. Supp. 2d 737 (E.D. Va. 2005) ....................................................................................12

*Vulcan Golf, LLC v. Google Inc.*,
    No. 07 C 3371, 2008 U.S. Dist. LEXIS 22155 (N.D. Ill. Mar. 20, 2008) .......................12, 13

*Ward v. Connor,*
    *495 F. Supp. 434* (E.D. Va. 1980) ........................................................................................10

**STATUTES**

15 U.S.C. § 1065............................................................................................................................2
15 U.S.C. § 1114.........................................................................................................................6, 7
15 U.S.C. § 1121(a) .......................................................................................................................8
15 U.S.C. § 1125(a) ...................................................................................................................6, 7
15 U.S.C. § 1125(c) ...................................................................................................................6, 7
15 U.S.C. § 1125(d) .......................................................................................................................6

28 U.S.C. § 1331............................................................................................................................7
28 U.S.C. § 1332..........................................................................................................................10
28 U.S.C. § 1338(a) .......................................................................................................................7
28 U.S.C. § 1338(b) ...................................................................................................................7, 9
28 U.S.C. § 1367(a) ...................................................................................................................7, 9

Texas Business & Commerce Code § 16.29..............................................................................6, 9

**OTHER AUTHORITIES**

4 McCarthy on Trademarks and Unfair Competition
    § 23:49, at 23-205 (rel. 45 2008) ..........................................................................................11

**I.     INTRODUCTION**

Plaintiff Full Sail, Inc. ("Full Sail") complains that Defendant Dauben Inc. ("Dauben") has willfully registered and used the fullsailuniversity.com Internet domain name in violation of United States and Texas law. Dauben's motion to dismiss argues that this Court lacks subject matter jurisdiction over Full Sail's claims and that Full Sail has failed to state a valid claim because Full Sail has neither registered nor used in commerce the FULL SAIL UNIVERSITY mark. With its head firmly planted in the sand, Dauben has ignored key allegations in Full Sail's Complaint that undermine its motion:

- Full Sail's continued use in commerce, since 1979, of its FULL SAIL mark in connection with educational services;
- Full Sail's five Federal registrations, nos. 2025339, 2029933, 2036758, 2026813, 2020653, for the FULL SAIL mark for use with various goods and services, including educational services; and
- Full Sail's Federal registration, no. 2025338, for the FULL SAIL REAL WORLD EDUCATION mark for use with educational services

Full Sail cannot explain Dauben's refusal to confront the facts alleged in the Complaint. Nor can Full Sail comprehend a legitimate basis for Dauben's motion to dismiss. The motion has no basis in fact or law, and Full Sail respectfully requests this Court to deny the motion.

**II.    FACTUAL BACKGROUND**

**A.    Full Sail, and its Use of the FULL SAIL Mark for Nearly Three Decades**

Full Sail operates an educational institution located in Winter Park, Florida. (Compl. ¶ 9.) Since its founding in 1979, nearly thirty years ago, it has used the FULL SAIL mark in commerce in connection with its provision of educational services. (Compl. ¶¶ 10, 13.) Full Sail has over 27,000 graduates and enrolls more than 5900 students from all 50 U.S. states and 45 countries. Full Sail offers thirteen degree programs on its 178-acre campus and online, including Bachelor of Science, Associate of Science, and Master of Science Degrees that span the field of entertainment media. (Compl. ¶ 10.) Full Sail operates a website at fullsail.com and fullsail.edu

1

(the "Full Sail website").

### B. Full Sail's Federal Registrations for the FULL SAIL Mark

Dauben's motion to dismiss, largely premised on Full Sail's supposed failure to obtain a Federal trademark registration, simply ignores the numerous Federal trademark registrations Full Sail alleged in its Complaint.

Full Sail has a federal trademark registration, no. 2025339, for the mark FULL SAIL for the following services in Class 41: "educational services, namely, offering courses of instruction in art, music, audio, film, video, television and digital media." United States Patent & Trademark Office records show a first use in commerce date for the provision of these services of January 10, 1979. (Compl. ¶ 15.) This registration is valid, enforceable, and incontestable under section 15 of the Lanham Act, 15 U.S.C. § 1065. (Compl. ¶ 16.) Full Sail has a number of other federal trademark and service mark registrations for the mark "FULL SAIL" and for marks incorporating "FULL SAIL" that are valid, enforceable, and incontestable. (Compl. ¶ 17.)

For convenience, here are the registrations Full Sail has alleged:

| Mark | Reg.No. | Class | Goods and Services |
|---|---|---|---|
| FULL SAIL | 2025339 | 41 | educational services, namely, offering courses of instruction in art, music, audio, film, video, television and digital media |
| FULL SAIL | 2020653 | 16 | textbooks, printed instructional manuals and photographs in the field of technical instruction for video, audio and digital media equipment and procedures, and information about the video, audio and digital media industry |
| FULL SAIL | 2036758 | 9 | prerecorded computer programs, prerecorded video films and cassettes, prerecorded films and prerecorded computer CD-ROMs and discs dealing with the operation of audio, video and digital media equipment, aspects of the audio, video and digital media industry, courses of instruction in equipment used in the audio, video, and digital media industry and orientation programs for education in the field of audio, video and digital media industry |
| FULL SAIL | 2029933 | 42 | retail store services featuring clothing, food and beverages, gifts and computer media, including hardware and software in the fields of audio, video recording and the digital media industry |
| FULL SAIL | 2026813 | 25 | pants, tops, shirts, jackets and hats |

| FULL SAIL REAL WORLD EDUCATION | 2025338 | 41 | educational services, namely, offering courses of instruction in art, music, audio, film, video, television and digital media |

C.     **Full Sail's Applications to Register the FULL SAIL UNIVERSTY Mark**

A registration for the exact words FULL SAIL UNIVERSITY is not the least bit necessary to the claims in this action, because Full Sail's rights in FULL SAIL alone for educational services are sufficient to protect against Dauben's cybersquatting. Even so, Full Sail has five pending applications, each publicly available from the U.S. Patent & Trademark Office files, to register the FULL SAIL UNIVERSITY mark for use in connection with educational services and other goods and services. The Patent & Trademark Office has allowed these registrations, subject to Full Sail filing an affidavit of use.[1] (Compl. ¶¶ 18-22.)

D.     **Dauben's Alleged Unlawful Activity**

1.     **Dauben's Business Model**

Dauben is a cybersquatter that knowingly acquires and profits from domain names that closely resemble the marks of legitimate businesses. (Compl. ¶¶ 26, 29.) Dauben uses domain names resembling marks of legitimate businesses to operate websites that contain advertising for and hyperlinks to various products and services, including products and services competing with those of the legitimate businesses. (Compl. ¶ 27.) Dauben profits when consumers click on hyperlinks on its websites that are associated with advertising: Dauben shares advertising revenue with the companies that help serve those ads. (Compl. ¶ 29.)

Consumers looking for the websites of legitimate businesses may unwittingly reach Defendants' websites by mistyping the legitimate business's website name into their web browser, wrongly guessing the legitimate business's website name, or by mistakenly clicking on Defendants' websites when they appear as results in search engines. (Compl. ¶ 28.)

---

[1] Since filing the Complaint, Full Sail has begun use of the FULL SAIL UNIVERSITY mark in connection with its educational services and filed an affidavit of use to that effect with the Patent and Trademark Office on March 27, 2008. See the Patent and Trademark Office website at http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=78724069.

3

To maximize illegal profits, Dauben knowingly seeks to register domain names that closely resemble the marks of well-known, legitimate businesses, because these domain names will win the most consumer traffic and provide Defendants with the most clicks and the most advertising revenue. (Compl. ¶ 30.)

  **2. Dauben's Repeated Bad-Faith Domain Name Registrations Have Been the Subject of Over 100 Arbitrations or Federal Court Proceedings.**

Dauben has been sued in federal courts and haled before Uniform Domain-Name Dispute Resolution Policy (UDRP) panels for cybersquatting on numerous occasions. (Compl. ¶ 31.)

The World Intellectual Property Organization (WIPO) lists 35 domain name dispute proceedings in which TIPA, Dauben's assumed name, was a named respondent. In each and every one of these 35 proceedings, the WIPO panel found bad faith by TIPA and ordered transfer of the domain at issue to the complainant. (Compl. ¶ 32.)

The National Arbitration Forum lists 63 domain name disputes in which TIPA was a named respondent. In all but 7 of those case, the panel found bad faith by TIPA and ordered transfer of the domain at issue to the complainant. (Compl. ¶ 33.)

The federal courts' PACER system shows that Dauben, Joey Dauben, or TIPA has been a Defendant in seven suits, most filed in this Court and some resulting in a temporary restraining order or preliminary injunction. Dauben has never won a dispositive motion or trial when faced with cybersquatting allegations in federal court. (Compl. ¶ 34.)

  **3. Dauben Strikes Against Full Sail**

Sometime during or after 2005, more than 25 years after Full Sail began offering its goods and services under its registered FULL SAIL marks and related marks – and after Full Sail began operating the Full Sail website at fullsail.com and fullsail.edu – Dauben, in bad faith, registered and began using the domain name fullsailuniversity.com, which fully incorporates Full Sail's FULL SAIL registered trademark and is identical to the mark in Full Sail's FULL SAIL UNIVERSITY allowed applications. (Compl. ¶ 35.)

4

When consumers visit fullsailuniversity.com, they are taken to Dauben's website that operates at http://ndparking.com/fullsailuniversity.com (the "infringing website"). Following Dauben's usual practice, the infringing website provides advertising and hyperlinks, including advertising with hyperlinks to other educational institutions and even to Full Sail. It shows, for example, links to the University of Phoenix at www.phoenix.edu and the Art Institute of Pittsburgh at   www.aionline.edu.  (Compl. ¶ 36-37.)

Full Sail is informed and believes, and therefore alleges that Dauben profits when consumers click on hyperlinks on the infringing website at the expense of Full Sail. (Compl. ¶ 39.)   When a consumer looking for Full Sail reaches Dauben's infringing website by mistake, the consumer is likely to click on various hyperlinks and is likely to be diverted from reaching Full Sail's own website. Consumers may be confused about whether Full Sail sponsors the infringing website or they may simply be distracted by the website. Either way, Full Sail loses opportunities to interact with consumers and loses the opportunity to make initial contact while Dauben profits from using Full Sale's name and reputation. (Compl. ¶ 40.)

In addition, when a consumer looking for the Full Sail website is misdirected to Dauben's infringing website and clicks on the "Full Sail" link on the left side of the site, the consumer sees an advertisement for the Full Sail website. Full Sail is informed and believes, and therefore alleges, that as a result of consumers clicking on this advertisement, Full Sail must make payments to the third-party advertiser, which are then shared with Dauben. Dauben has set up a fraudulent toll booth and is making money from Full Sail's freely available website. (Compl. ¶ 41.)

### E.    Full Sail's Claims Against Dauben

When Full Sail learned of Dauben's registration and use of fullsailuniversity.com and Dauben's infringing website, Full Sail attempted to recover the domain name without litigation.[2]

---

[2] Dauben spends a paragraph of its motion falsely describing the parties' pre-litigation discussions. As the conduct of the parties prior to the litigation is irrelevant to Dauben's motion to dismiss, Full Sail will not dignify Dauben's account with a response. If the Court wishes, Full Sail's counsel will furnish an appropriate declaration, attaching email correspondence and

When Dauben refused to turn over the fullsailuniversity.com domain, Full Sail filed this lawsuit and has alleged: (1) infringement of a registered mark under 15 U.S.C. § 1114; (2) violation of the 15 U.S.C. § 1125(a), the Federal unfair competition law prohibiting false designation of origin; (3) dilution of a mark under 15 U.S.C. § 1125(c); (4) cybersquatting under 15 U.S.C. § 1125(d); (5) injury to business reputation or trade name under Texas Business & Commerce Code § 16.29; and (6) trademark infringement and unfair competition under Texas common law. Full Sail alleged both federal question and diversity subject matter jurisdiction. (Compl. ¶ 7.)

### F. Dauben's Motion

Dauben now moves to dismiss Full Sail's entire complaint based, incredibly, on Full Sail's "failure" to allege a registered trademark or use of a mark in commerce. Because Full Sail has alleged these things, Dauben's motion has no merit.

## III. ANALYSIS

### A. Legal Standard

Dauben brings a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. "Motions to dismiss are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir. 2000).

Courts consider Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction before other challenges on the merits, because the court cannot address the merits unless it determines it has jurisdiction. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). On a Rule 12(b)(1) motion, the court may rely on the complaint alone or the complaint supplemented by undisputed facts or facts determined by the court. *MCG, Inc. v. Great Western Energy Corp.*, 896 F.2d 170, 176 (5th Cir. 1990).

With motions to dismiss under Rule 12(b)(6), the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches*

---

explaining the context of statements, that will correct any misimpression defense counsel has tried to create.

6

*Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Hamilton v. First Am. Title Co.*, No. 07-1442, 2008 U.S. Dist. LEXIS 13732 (N.D. Tex. Feb. 28, 2008) (Fish, J.) (citing *In re Katrina Canal Breaches*, 495 F.3d at 205; *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).

In general, trademark claims, which largely hinge on questions of fact, such as whether a party's conduct creates a likelihood of confusion, are not the proper subject of a Rule 12(b)(6) motion, which should concern only a complaint's allegations and not a party's evidence. A "plaintiff is not required to prove the likelihood of confusion at the pleading stage." *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 859 (E.D. Pa. 1985) (denying motion to dismiss trademark claims under 15 U.S.C. §§ 1114 and 1125).

### B.    The Court Has Subject Matter Jurisdiction.

#### 1.    The Court has Federal Question Jurisdiction

Full Sail's four federal causes of action arise under the 15 U.S.C. §§ 1114, 1125(a), 1125(c), and 1125(d) – all part of the Lanham Act, the Federal trademark law. Full Sail's two Texas causes of action are before the Court due to the grant of original jurisdiction in 28 U.S.C. § 1338(b) and also due to supplemental jurisdiction under 28 U.S.C. § 1367(a).

##### (a)    Full Sail's Federal Claims Arise Under the Lanham Act.

Three statutes authorize this Court to adjudicate Full Sail's Lanham Act claims. First, 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Second, 28 U.S.C. § 1338(a) specifically grants district court jurisdiction over "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." Third, the Lanham Act itself explicitly provides that "district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 15 U.S.C. § 1121(a).

Dauben's argument, though, is not that Lanham Act claims cannot come before this Court. Rather, Dauben argues that without alleging registration or use in commerce of the FULL SAIL UNIVERSITY mark, Full Sail has not invoked the Court's jurisdiction. Dauben's argument fails for two reasons.

First, Dauben ignores two facts that completely undermine its position. Fact 1: Full Sail has numerous registrations for the FULL SAIL mark. Fact 2: Full Sail has used the FULL SAIL mark in commerce in connection with its educational programs for nearly 30 years, since 1979. (Compl. ¶ 10, 13, 15-17.) Full Sail's Lanham Act claims, and its Texas state law claims, all concern Dabuen's registration and use of the fullsailuniversity.com domain name to infringe, dilute, or otherwise harm Full Sail's registered and long-in-use FULL SAIL mark, which the fullsailuniversity.com fully incorporates. Dauben has not offered a single reason why the registration and use of the FULL SAIL mark is insufficient to invoke federal question jurisdiction. Simply, there is no reason. That Full Sail has also applied to register the FULL SAIL UNIVERSITY mark and has intended to use that mark in commerce can only strengthen Full Sail's claims; it certainly does not weaken them or deprive this court of subject matter jurisdiction.

Dauben's leading case, *Fila Sport, S.p.A. v. Diadora America, Inc.*, 141 F.R.D. 74 (N.D. Ill. 1991) is completely inapposite. In *Fila*, the Court held that the plaintiff "failed to establish actual registration in the U.S. of either of its two marks." *Id.* at 77. Thus, there wasn't *any* registration before the *Fila* court. That is not so here.

The second reason Dauben's jurisdictional attack fails is that it isn't really a jurisdictional attack after all. Whether Full Sail has registered marks or has used its marks in commerce are questions that go to the merits of particular causes of action, not this Court's jurisdiction to hear those causes of action. When a defendant argues that the plaintiff "does not own the trademarks or, alternatively, that the trademarks are not currently valid," that is a "challenge to the adequacy of the federal claims presented in the . . . Complaint," and " the Court will assume jurisdiction and decide the Motions to Dismiss under the Rule 12(b)(6) standard." *Dell, Inc. v. This Old*

8

*Store, Inc.*, No. H-07-0561, 2007 U.S. Dist. LEXIS 73952, at *5-6, *9 n.2 (S.D. Tex. Oct. 3, 2007). The fatal shortcomings of Dauben's Rule 12(b)(6) motion are explained below.

      **(b)**      **The Court has Original and Supplemental Jurisdiction over Full Sail's State Law Claims.**

This Court's jurisdiction also extends to Full Sail's state law claims for injury to business reputation or trade name, under Texas Business & Commerce Code § 16.29, and trademark infringement and unfair competition, under Texas common law.

First this Court has original, non-discretionary jurisdiction over Full Sail's state law claims under 28 U.S.C. § 1338(b), which grants jurisdiction to district courts over "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."

Second, this Court's jurisdiction over Full Sail's Lanham Act claims gives this Court supplemental jurisdiction over Full Sail's state law claims. Supplemental jurisdiction is appropriate under 28 U.S.C. § 1367(a), which grants district courts "jurisdiction over all other claims that are so related" to the federal claims "that they form part of the same case or controversy under Article III of the United States Constitution."

Full Sail's state law claims arise from the same set of allegations as its Federal claims. Further, "the elements of a [Texas] state law claim for trademark infringement and unfair competition are the same as for" Federal trademark infringement claims. *Dell*, 2007 U.S. Dist. LEXIS 73952, at *14 (noting this with regard to state law claims for "trademark infringement, unfair competition, injury to business reputation or trademark, fraud, conversion, breach of contract, tortious inducement of breach of contract, and tortious interference with prospective economic advantage"); *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 484 (5th Cir. 2004) ("The likelihood of confusion standard also governs Scott Fetzer's claims for trademark infringement and unfair competition under Texas law."). Supplemental jurisdiction is proper.

9

### 2. The Court has Diversity Jurisdiction.

Not only does the court have federal question jurisdiction, but it also has diversity jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

The parties' citizenship is diverse. Full Sail is a citizen of Florida. (Compl. ¶ 2.) Dauben is a citizen of Texas. (Compl. ¶ 3.) The mere naming of Does 1-10 does not affect this calculus. *See Ward v. Connor, 495 F. Supp. 434*, 439 (E.D. Va. 1980) ("[W]e do not find that the Court has been divested of diversity jurisdiction by the mere presence of unnamed parties to this suit."); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 279 (9th Cir. 1984) ("It is well-settled in this court that the inclusion of Doe defendants cannot defeat diversity unless the complaint sufficiently identifies the Does and their relationship to the charging allegations."); *cf. Stephens v. Halliburton Co.*, No. 3:02-CV-1442-L, 2003 U.S. Dist. LEXIS 15739, at *18-19 (N.D. Tex. Sep. 5, 2003) (noting that the "Fifth Circuit has not yet addressed whether the presence of fictitious party defendants destroys diversity in cases directly commenced in federal court when jurisdiction is based on diversity of citizenship").

The amount in controversy easily exceeds the $75,000 mark. In its prayer for relief, Full Sail has sought attorney fees and punitive damages in addition to actual damages – and statutory damages of $100,000 on its Lanham Act claim. Attorney fees and punitive damages count toward the jurisdictional amount. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). "[A] claim for an unspecified amount of punitive damages is deemed to exceed the federal jurisdictional minimum." *Sun Life Assur. Co. v. Fairley*, 485 F. Supp. 2d 731, 735 (S.D. Miss. 2007) (citing *St. Paul*, 134 F.3d at 1255). Also, a plaintiff can reach the jurisdictional amount by aggregation of several claims. *La-Tex Supply Co. v Fruehauf Trailer Div., Fruehauf Corp.*, 444 F.2d 1366 (5th Cir. 1971). Given the amount of statutory damages sought in Full Sail's federal claims, $100,000, it is reasonable to conclude that the Full Sail seeks at least this amount in relief, whether categorized as statutory damages or as unspecified punitive damages under state law. Thus, Full Sail meets the minimum and it does not "appear to a legal

certainty that [its] claim is really for less than the jurisdictional amount." *St. Paul*, 134 F.3d at 1253.

### C.     Full Sail States Valid Claims for Relief.

Like its attack on jurisdiction, Dauben's attack on the merits of Full Sail's claims falls flat. Dauben again refuses to acknowledge Full Sail's registration and use of the FULL SAIL marks at the heart of Full Sail's claims for relief.

And Full Sail's claims are hardly radical. For nearly thirty years, Full Sail has used its registered FULL SAIL mark in connection with providing educational services and related goods and services. Dauben harmed Full Sail by registering and using the domain name fullsailuniversity.com. Dauben's addition of the generic term UNIVERSITY to Full Sail's FULL SAIL mark does not suddenly excuse Dauben's blatant infringement. Under Dauben's theory, the maker of IVORY skin cleaner could not sue for another's use of the mark IVORY SKIN CLEANER unless the skin cleaner maker had registered and used IVORY SKIN CLEANER – no matter that the skin cleaner maker had registered and used the IVORY mark or perhaps even the IVORY SOAP mark.

When a mark contains a generic or even a descriptive component, it is proper to discount that portion when determining whether the mark will likely cause confusion with another. 4 McCarthy on Trademarks and Unfair Competition § 23:49, at 23-205 (rel. 45 2008); *In re Dixie Restaurants*, 105 F.3d 1405, 1407 (Fed. Cir. 1997) ("Neither the design element nor the generic term "cafe" offers sufficient distinctiveness to create a different commercial impression"); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 947 (Fed. Cir. 2000) ("Regarding descriptive terms, this court has noted that the 'descriptive component of a mark may be given little weight in reaching a conclusion on likelihood of confusion.'"). Thus, "THE DELTA CAFE and design for restaurant services specializing in Southern-style cuisine . . . was likely to cause confusion with the registered mark DELTA for hotel, motel, and restaurant services," *In re Dixie Restaurants*, 105 F.3d at 1405, and LASERSWING was not distinguishable from LASER for golf products, *Cunningham*, 222 F.3d at 947. Similarly, when a plaintiff operated the "Golden

Door" spa and registered that mark, it didn't beat back a motion to dismiss *but successfully won an injunction* against defendant's operation of hair salons under the marks "Golden Door Coiffeur" and "Golden Door for Hair." *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 350 (9th Cir. 1980) (noting that "Defendant's attempt to distinguish the names . . . is unpersuasive") (affirming that Plaintiff "established a cause of action under 15 U.S.C. § 1114(1)," *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956, 964 (N.D. Cal. 1977)).

Other courts have widely recognized this principle in cybersquatting cases like the one now before this Court. For example, in *Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006), the Sixth Circuit affirmed a grant of summary judgment to the plaintiff on trademark infringement, dilution, and cybersquatting claims based on Audi's AUDI mark. Audi AG complained about the defendant's operation of the audisport.com website, on which defendant "merely had hyperlinks to goods (hats and shirts) and email hosting services." *Id.* at 547. Such "'minimal' advertisements constitute use of the owner's trademark in connection with the advertising of the goods, which the Lanham Act proscribes;" therefore, defendant "was attempting to directly profit from Audi's good will." *Id. See also Venetian Casino Resort, LLC v. VenetianGold.com*, 380 F. Supp. 2d 737, 739 (E.D. Va. 2005) (granting summary judgment on in rem cybersquatting claims to the owner of the VENETIIAN mark against VenetianGold.com and other similar domain names).

Perhaps the most instructive decision to date is *Vulcan Golf, LLC v. Google Inc.*, No. 07 C 3371, 2008 U.S. Dist. LEXIS 22155 (N.D. Ill. Mar. 20, 2008), decided shortly after Full Sail filed its complaint. In *Vulcan*, a class action, the lead plaintiff, Vulcan, owned the mark VULCAN for use in connection with golf clubs. *Id.* at *22, *44. Vulcan sued a number of defendants, including two "parking companies" that allegedly trafficked in the domain name wwwVulcanGolf.com and enabled the display of targeted advertising on that website. *Id.* at *4-5 & n.2. Vulcan brought claims against the parking companies under the same four provisions of the Lanham Act that Full Sail invokes in this case: sections 1125(a), (c), and (d), and 1114. *Id.* at *7.

12

The parking companies moved to dismiss these four claims. *Id.* at *8. At every turn, the court sustained Vulcan's claims and rejected the parking companies' arguments for dismissal. *Id.* at *14-20, *22-36, *40-41, *48. In doing this, the court rejected an argument similar to the argument Dauben makes in this case, holding that Vulcan alleged standing when it alleged that it "owns the Vulcan trademark and the 'Vulcan Golf' tradename and that vulcanogolf.com violates Vulcan's trademark on that name." *Id.* at *22. The court also refused to consider whether there was a lack of likelihood of confusion at the pleading stage, because "likelihood of confusion is a fact-specific inquiry best left for decision after discovery." *Id.* at *34.

The parallels between this case and Vulcan are striking. Yet this case is far easier than Vulcan: Dauben is *the registrant* of the contested domain, not a mere "parking company." This court should follow *Vulcan*'s lead and deny Dauben's motion to dismiss for failure to state a claim. Full Sail's allegations that Dauben has willfully registered the fullsailuniversity.com domain to infringe, dilute, and otherwise harm Full Sail's FULL SAIL mark are more than adequate to state claims under the Lanham Act and under Texas state law, which, as discussed already, relies on the same standards as the federal claims.[3]

///
///
///
///
///
///
///
///

---

[3] The rule against registering phantom marks, *see In Re International Flavors & Fragrances, Inc.*, 183 F.3d 1361 (Fed. Cir. 1999), does not help Dauben. Full Sail never applied for a phantom mark. In this case, Full Sail has federal trademark registrations for FULL SAIL and applications for FULL SAIL UNIVERSITY; Dauben has unlawfully registered and used the domain name fullsailuniversity.com. The phantom mark issue is itself a phantom.

13

## IV.     CONCLUSION

Full Sail's claims are valid and arise under the Lanham Act. The Court should deny Dauben's motion.

Dated:  April 22, 2008                                Respectfully submitted,

WINSTON & STRAWN LLP
Andrew P. Bridges (admitted pro hac vice)
abridges@winston.com
Susan E. Lee (admitted pro hac vice)
slee@winston.com
Matthew A. Scherb (admitted pro hac vice)
mscherb@winston.com
101 California Street
San Francisco, CA 94111-5894
Telephone:  (415) 591-1000
Facsimile:   (415) 591-1400

By:   /s/ _____
        Matthew A. Scherb

STRASBURGER & PRICE, LLP
Charles M. Hosch (State Bar No. 10026925)
charles.hosch@strasburger.com
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Telephone:  (214) 651-4678
Facsimile:   (214) 659-4050

Counsel for Plaintiff Full Sail, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 22, 2008 I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

    Daniel George Altman
    Shrull Altman
    1701 River Run, Suite 1116
    Fort Worth, TX 76107
    Tel:    817/336-3925
    Fax:   817/336-2124
    Email: dan@shrullaltman.com

                                        _/s/_____
                                        Matthew A. Scherb